

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

NOV 13 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LORETTA BOYD WILLIAMS<br>    Plaintiff, | )<br>)<br>) | Case No. 7:09cv00227 |
| v. | )<br>) | **MEMORANDUM OPINION** |
| FAMILY SERVICE OF ROANOKE VALLEY<br>    Defendant. | )<br>)<br>) | By: Samuel G. Wilson<br>United States District Judge |

This is an action by plaintiff, Loretta Boyd Williams, claiming that her former employer, Family Service of Roanoke Valley ("FSRV"), discriminated against her on account of her age in violation of the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 621 *et seq.*, and on account of her race in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq.* According to Ms. Williams' complaint and supporting documentation, Ms. Williams abruptly resigned her position as a secretary after her supervisor informed her that he needed her to work temporarily as a receptionist. FSRV has moved to dismiss on the ground that Ms. Williams' complaint fails to state a plausible claim for relief. FSRV has alternatively moved for summary judgment. In support of its motion for summary judgment, FSRV has filed the affidavit of its chief executive officer ("CEO"), which demonstrates that Ms. Williams did not suffer an adverse employment action and articulates a nondiscriminatory reason for its actions. The court concludes that both motions are well founded and grants summary judgment.

I.

Ms. Williams is an African American who was 61 years old on November 20, 2006, the week before she resigned from her employment as a secretary for FSRV, a private, not-for-profit

organization and partner agency of the United Way. According to the documents filed with Ms. Williams' complaint, on that date Ms. Williams met with her supervisor, the Director of Counseling, Tom Tankersley, and the Program Manager of the Domestic Violence/Anger Management Program, Sterling McLaughlin, and was told that they had decided that she "was going to answer the phone temporarily at the front desk" effective November 27, 2006. (Williams' Intake Questionnaire, 1-2.) McLaughlin considered the new assignment to be a "good thing" because the calls would be "routed correctly." (Id. at 2.) Although the new assignment did not affect her pay or benefits, they would not tell Ms. Williams when she could expect to return to her previous work – work she considered to be more important. Ms. Williams was told that another employee, Jennie Long, would be handling Ms. Williams' other responsibilities while Ms. Williams was at the front desk. Ms. Williams notes that Ms. Long is young and white. Ms. Williams never worked the new assignment. Instead, on November 27, following Thanksgiving vacation, she returned to the office and tendered her resignation. As Ms. Williams explained to the EEOC, she believed that Long was "undermining" her at work and that her new assignment was an effort ultimately to replace her:

> Mr. Tankersley (and the others involved) knew they could not tell me to retire so they could give my position to a younger, white female since that would be age discrimination so I believe they went another route, the decision to have me work "temporarily" up front answering the phones. I do not believe they expected me to resign from my position but I do believe they wanted me out.

(Id. at 4.) She also notes that a coworker, Panzie Saunders, who was also over 60, was recently replaced by a much younger female.

The day after Williams' resignation, FSRV's CEO, John F. Pendarvis, called Ms. Williams, and according to Ms. Williams, the following transpired:

2

> He asked me, 'Loretta what happened, what did they say to you, what did they do to you?' After explaining what had occurred, Mr. Pendarvis stated this was not his understanding of the situation and that he had been told that I would be asked to sit up front for a couple of days until they hired someone else to fill the receptionist position.

(Id. at 3.)

Ms. Williams filed a charge of discrimination with the EEOC complaining about the November 20, 2006, decision to reassign her temporarily. The EEOC found no proof that FSRV had discriminated against Ms. Williams and so advised her:

> The evidence revealed that this employer advised you on November 20, 2006, that because of a business need, you would need to fill in at the front desk on a temporary basis until a receptionist could be hired. This temporary assignment did not affect your pay or benefits. Further, this employer contends that on November 27, 2006, you advised it that you [were] resigning and gave no reason for your resignation. There is no evidence that your race or age were factors in this temporary assignment.

(March 20, 2009 ltr. from the EEOC.)

The EEOC issued Ms. Williams a "right to sue" letter and she commenced this action. FSRV moved to dismiss and alternatively for summary judgment with Pendarvis' supporting affidavit. Pendarvis' affidavit is substantially consistent with Ms. Williams' factual account, though it sharply contests her speculation that there was "a plan or intent to force [Ms. Williams] out and/or replace her with Jennie Long." (Pendarvis aff. at ¶ 11.) Pendarvis states that he was "surprised to learn" of her "sudden resignation," that she had been a "good performer" for many years, and "was well liked and respected." (Id. at ¶ 3.) Pendarvis had been on vacation and when he returned on November 28, 2006, and learned that she had abruptly resigned the day before, he called her at home and asked her what happened:

> I called her at home that day and asked her what had happened. She informed me that Tom Tankersley and Sterling McLaughlin had informed her on November 20, 2006 that they needed her to temporarily work at our reception desk. Even though her hours, pay

3

and other employment terms would remain the same, she viewed this as a demotion. She stated that her "pride" would not allow her to accept this assignment, so she resigned without notice. She stated that her decision was final.

(Id.)

According to Pendarvis, "the receptionist position is an important one" because the receptionist "is often the face or voice of the organization" and, in addition to handling phone calls, "is responsible for interacting with a large number of walk-in customers who need [FSRV's] services." (Id. at ¶ 5.) Pendarvis states that before November 20, 2006, FSRV "had a difficult time finding the right person for this position" and recognized that Ms. Williams "had the experience and the skills." (Id.) Pendarvis states that "he was aware that she was going to be assigned to this role on a <u>temporary</u> basis until [FSRV] could hire a new receptionist." (Id.) He states that the temporary reassignment was "not a demotion" and that her "hours, pay, benefits and other terms and conditions of employment would remain the same." (Id.) He denies a plan or intent to "force her out" or replace her. He explains that FSRV "needed" Williams because it was "short-handed" and her abrupt resignation left FSRV "in a difficult position" because it was "unexpectedly down two persons." (Id. at ¶ 11.) He also notes that the other woman Williams implies was terminated on account of her age, voluntarily resigned.[1] (Id. at ¶ 12.)

The court held a hearing on FSRV's motions to dismiss and for summary judgment and

---

[1] Pendarvis notes that Ms. Williams applied for unemployment compensation with the Virginia Employment Commission and that the Commission twice determined that she was ineligible for unemployment compensation because she voluntarily resigned from her employment without good cause. However, "a judicial determination by one administrative agency is not binding on another adjudicator, which is seeking to determine an apparently identical issue under a different statute . . . so long as there exists substantial differences between the statutes themselves." Ross v. Commc'n Satellite Corp., 759 F.2d 355, 361 (4th Cir. 1985) *abrogated on other grounds by* Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

4

afforded Ms. Williams multiple opportunities to contradict anything FSRV had to say and to explain any evidence she had in opposition to those motions and repeatedly attempted to discern a factual basis to support her claims. The court also asked her what relief she was seeking, and she responded unequivocally that she was not seeking reinstatement.

## II.

FSRV has argued that Ms. Williams has failed to state a plausible claim for relief and that the court should dismiss her complaint. Even considering Ms. Williams' *pro se* status, the court is constrained to agree.

To maintain a claim of race or age discrimination, an individual must have suffered an adverse employment action. See Boone v. Goldin, 178 F.3d 253 (4th Cir. 1999); Hill v. Lockheed Martin Logistics Mgmt, Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (en banc). An employer's action that creates "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," is an adverse employment action. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); see also James v. Booz-Allen Hamilton, 368 F.3d 371, 375 (4th Cir. 2001) (stating that for an employment action to be adverse, there must be evidence of a "discriminatory act which adversely affects the terms, conditions or benefits of the Plaintiff's employment"). Courts should take a "'case-by-case approach,' examining the unique factors relevant to the situation at hand," in determining whether an employer's action qualifies as an adverse action. Jeffries v. State of Kan., 147 F.3d 1220, 1232 (10th Cir. 1998) *abrogated on other grounds by* Burlington, 524 U.S. at 742.

Indicators of an adverse employment action include a decrease in pay, a demotion, loss of

job title or supervisory responsibility, and loss of opportunities for advancement. See Boone, 178 F.3d at 255. But "[t]he mere fact that a new job assignment is less appealing to the employee . . . does not constitute [an] adverse employment action." James, 368 F.3d at 376. Absent a "decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Id. Even a permanent reassignment "can only form the basis of a valid [discrimination] claim if the plaintiff can show that the reassignment had some significant detrimental effect." Boone, 178 F.3d at 256. A temporary reassignment may lack any significant detrimental effect, and therefore, lack any of the hallmarks of an adverse employment action. See Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000). "[C]ases where the employment action, while perhaps being materially adverse if permanent, is very temporary," may be "[s]imilar to cases where the employment action is not significant enough to rise to the level of a materially adverse employment action" and consequently not actionable. Id.

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000). Therefore, to establish a race-based disparate-treatment claim under Title VII, a plaintiff must prove, by a preponderance of the evidence, that her race was "a motivating factor" for an adverse employment decision.[2] See

---

[2] "In Price Waterhouse, a plurality of the Court and two Justices concurring in the judgment determined that once a plaintiff in a Title VII case proves that [the plaintiff's membership in a protected class] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken [that factor] into account." Gross v. FBL Fin. Servs.,

Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343 (2009); Hill, 354 F.3d 277. Whereas, "[t]o establish a disparate-treatment claim under the plain language of the ADEA" a plaintiff must prove "that age was the 'but-for' cause of the employer's adverse decision." Gross, 129 S.Ct. at 2350; see also EEOC v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992) ("In order to establish a cause of action under the ADEA, a plaintiff must demonstrate that but for the employer's motive to discriminate against the plaintiff on the basis of age, the plaintiff would not have been discharged [or demoted].").

A plaintiff can establish intentional discrimination under Title VII or the ADEA in two ways. First, the plaintiff can demonstrate discrimination through direct or circumstantial evidence, see Hill, 354 F.3d at 284; Love-Lane v. Martin, 355 F.3d 766, 787 (4th Cir. 2004), by demonstrating (1) that the employee was covered by the Act, (2) that he or she suffered an adverse employment action at the hand of an employer covered by the Act, and (3) that the employee's race was "a motivating factor" or that "but for" the employee's age, he or she would not have been subjected to the adverse employment action. See Gross, 129 S.Ct. at 2343; Clay Printing, 955 F.2d at 941 (internal citations omitted). Second, the plaintiff can proceed under the McDonnell Douglas burden-shifting framework. See Gross, 129 S.Ct. at 2349; Love-Lane, 355 F.3d at 787; Clay Printing, 955 F.2d at 940. Under McDonnell-Douglas, the plaintiff can establish a *prima facie* case of intentional discrimination by demonstrating that:

---

Inc., 129 S.Ct. 2343, 2349 (2009) (citations omitted). "Congress has since amended Title VII by explicitly authorizing discrimination claims in which an improper consideration was 'a motivating factor' for an adverse employment decision . . . even though other factors also motivated the practice." Id.; see 42 U.S.C. § 2000e-2(m). In essence, Congress's amendment "partially abrogated Price Waterhouse's holding by eliminating an employer's complete affirmative defense to 'motivating factor' claims." Gross,129 S.Ct. at 2352 (citations omitted).

(1) he is a member of a protected class, (2) he [suffers an adverse employment action], (3) at the time of [the adverse employment action], he was performing at a satisfactory level, meeting his employer's legitimate expectations, and (4) following [the adverse employment action], he was replaced by a person outside the protected class.³

Clay Printing, 955 F.2d at 941. Once the plaintiff does so, "the burden [of production] shifts to the defendant 'to articulate some legitimate, nondiscriminatory reasons . . . .'" for its conduct. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). The employer need not prove the absence of a discriminatory motive; it need only articulate a legitimate reason for its behavior. EEOC v. W. Elec. Co., 713 F.2d 1011, 1014 (4th Cir. 1983) (citing Smith v. Univ. of N.C., 632 F.2d 316, 332-33 (4th Cir. 1980)). If the employer satisfies its burden of production, then the presumption of discrimination disappears, and the employee must show, by a preponderance of the evidence, that the employer's proffered reasons were merely a pretext for discrimination. Burdine, 450 U.S. at 252-53, 256; Rowe v. Marley Co., 233 F.3d 825, 829 (4th Cir. 2000) ("[P]roving a discrimination claim . . . requires a showing that an employer's asserted non-discriminatory reason for the challenged employment action is actually a pretext."). To demonstrate that the defendant's proffered reason was a pretext, the plaintiff "must show that as between the plaintiff's [race or] age and the defendant's explanation, [race or] age was the more likely reason for the dismissal, or that the employer's proffered explanation is simply unworthy of credence."

---

³ The court recognizes that while a Title VII plaintiff needs to show that he was replaced by someone outside the protected class, an ADEA plaintiff need not. See Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996) (finding that "the worker who replaces an ADEA plaintiff need not be outside the protected class" because "[t]he fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he has lost out because of his age.") (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 309-10 (1996)).

Burns, 96 F.3d at 731 (citations omitted).

From a pleading perspective, a plaintiff asserting disparate treatment claims under Title VII and the ADEA need not allege "specific facts establishing a prima facie case of discrimination" under McDonnell Douglas to survive a motion to dismiss. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). McDonnell Douglas' burden-shifting framework "is an evidentiary standard, not a pleading requirement" of Rule 8 of the Federal Rules of Civil Procedure which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz, 534 U.S. at 510. But the complaint, including any exhibits attached to the complaint, see Fayetteville Investors v. Commercial Builders, 936 F.2d 1462, 1465 (4th Cir. 1991), "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal v. Ashcroft, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. The Supreme Court has identified "two working principles" that underpin its recent pleading jurisprudence:

> First, the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not

9

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief.

Id. at 1949-50 (citations omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled the assumption of truth." Id. at 1950. Then, the court should assume the veracity of "well-pleaded" factual allegations, if there are any, and "determine whether they plausibly give rise to an entitlement to relief." Id. With the above precepts in mind, the Court turns to Ms. Williams' complaint.

Ms. Williams believes that her supervisors intended for her reassignment to be permanent and an effort to force her to retire, and she believes that they were motivated to discriminate against her on account of her age and race. Her personal beliefs and speculation, however, are no substitute for proof. At the pleading stage, it is necessary to state a plausible claim for relief that raises the right to recover beyond the speculative level. Stripped of its speculation and personal belief, Ms. Williams' complaint shows only this: she was performing satisfactorily, her supervisors asked her to work temporarily as a receptionist with no loss of pay or benefits because of a legitimate need, a younger white female was to cover for her temporarily, and another employee that was approximately Williams' age voluntarily resigned. These facts fall far short of raising a plausible claim for relief that discriminatory animus motivated an adverse employment action. In short, nothing Ms. Williams has said in her pleadings, or in open court in support of her pleadings, and ultimately her claim, raises her right to relief above the speculative level. In reaching this conclusion, the court notes that it does not view this as a technical pleading failure that disadvantages a *pro se* plaintiff. To the contrary, the Court has assumed the

veracity of her relevant factual allegations, including her amplification of them in open court, and concluded that they do not "plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950.

### III.

FSRV also argues that it is entitled to summary judgment[4] because the uncontradicted evidence establishes that it did not subject Ms. Williams to an adverse employment action, that it has taken no action whatsoever against her on account of her race or age, and because it has proffered a legitimate, nondiscriminatory reason for asking Ms. Williams to fill in temporarily as a receptionist. Again, the court agrees.

The attachments to Ms. Williams' complaint document the fact that her supervisors told her that she was only expected to fill in temporarily as a receptionist. Even a permanent "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." James, 368 F.3d at 376. Here, Ms. Williams offers speculation to support her claim that not only was the reassignment not going to be temporary, it was actually a step along the path to her discharge.[5] The speculative nature of

---

[4] Summary Judgment is proper "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court views the evidence and makes all reasonable inferences in the light most favorable to the nonmoving party. Sempione v. Provident Bank of Md., 75 F.3d 951, 954 (4th Cir. 1996).

[5] Ms. Williams' complaint does not allege that she was constructively discharged. However, to the extent Ms. Williams' complaint could be construed as raising a constructive discharge claim, it falls far short. To establish a claim of constructive discharge, the claimant "must demonstrate that the employer deliberately made working conditions intolerable and thereby forced [the] claimant to quit." Clay Printing, 955 F.2d at 944 (referencing EEOC v. Serv. News Co., 898 F.2d 958, 962, n. 1 (4th Cir. 1990); Bristow v. Daily Press, Inc., 770 F.2d

this necessary component of her claim supports not only FSRV's motion to dismiss but equally supports FSRV's motion for summary judgment. FSRV's motion on this point is further supported by Pendarvis' affidavit, which fully corroborates the temporary nature of Ms. Williams' receptionist duties.

Although Ms. Williams claim fails fundamentally for lack of an adverse employment action, it also fails because FSRV has offered, through the affidavit of its CEO, a legitimate, nondiscriminatory reason for its actions: it was shorthanded and needed someone it believed to be competent to fill in, and it was thought that Ms. Williams was such a person. Despite a meaningful opportunity in open court, Ms. Williams could highlight no facts demonstrating that FSRV's proffered reason was pretextual or unworthy of credence and that her age and race were the more likely reasons for FSRV's actions. Accordingly, FSRV is entitled to summary judgment.

## IV.

For the reasons stated herein, the court has concluded that Ms. Williams' complaint fails

---

1251, 1255 (4th Cir. 1985)). "Deliberateness exists only if the actions complained of 'were intended by the employer as an effort to force the employee to quit.'" Bristow, 770 F.2d at 1255 (quoting EEOC v. Fed. Reserve Bank of Richmond, 698 F.2d 633, 672 (4th Cir. 1983)). Whether working conditions were intolerable is "assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." Id. Here, there is no evidence that Ms. Williams' working conditions were intolerable at the time FSRV requested her to fill in as the receptionist. There is no evidence that FSRV temporarily reassigned Ms. Williams for the purpose of forcing her to quit. FSRV's CEO stated under oath that Ms. Williams was a valuable asset to FSRV as she "had been a good performer for many years." (Pendarvis Aff. ¶ 3.) The fact that Pendarvis was surprised to learn of Ms. Williams' sudden resignation indicates that the decision to transfer her was not one designed to force her out of the office. As Ms. Williams admits, she had no reason to believe that FSRV expected her to resign. There is no evidence that FSRV deliberately made Ms. Williams' working conditions intolerable, and on these facts, a reasonable person in her position would not have felt compelled to resign.

to state a plausible claim for relief and is subject to dismissal on that ground (not because of a pleading technicality or oversight and not because she has said too little but rather because what she has said is not actionable) and that FSRV is entitled to summary judgment. However, because FSRV's summary judgment motion subsumes its motion to dismiss, the court will grant it summary judgment.

**ENTER**: This 13th day of November, 2009.

_____
UNITED STATES DISTRICT JUDGE